IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Criminal No. 7:19-cr-94 |
| v. | ) | |
| | ) | |
| MARIUS CATALUI, | ) | By:   Michael F. Urbanski |
| et al., | ) | |
| Defendant. | ) | Chief United States District Judge |

**MEMORANDUM OPINION**

This matter is before the court on defendant Marius Catalui's motion for pretrial release on bond pursuant to an alleged Fifth Amendment due process violation, Sixth Amendment right to counsel violation, and 18 U.S.C. § 3142 of the Bail Reform Act. ECF No. 75. Having reviewed the record and the pleadings, the court **DENIES** the motion.

I.

On December 17, 2019, defendant was arrested in Pennsylvania while attempting to flee the United States and board a flight to Ireland. ECF No. 68. Catalui was arrested pursuant to a seven-count criminal complaint alleging violations of 18 U.S.C. § 1029(a) – conspiracy to defraud by counterfeit access devices; 18 U.S.C. §§ 2 and 1344 – bank fraud and attempted bank fraud; 18 U.S.C. §§ 2, 1029(a)(1) and (c)(1)(A)(i) – access device fraud; and 18 U.S.C. § 1028A(a)(1) – aggravated identity theft. ECF No. 32.

An initial appearance was held in January 2020, and the Honorable Robert S. Ballou, United States Magistrate Judge, entered an order of detention pending trial after finding Catalui to be a flight risk. ECF No. 50. This determination was made based on several factors including (1) the strong weight of the evidence against the defendant; (2) defendant's lengthy incarceration if convicted; (3) defendant's lack of communal ties to the area; (4) defendant's

1

lack of a stable job or residence; (5) defendant's significant ties outside of the United States; (6) defendant's lack of legal status in the U.S.; and (7) defendant's potential removal or deportation after serving any period of incarceration. Id.; see 18 U.S.C. § 3142(g).

Because of the COVID-19 pandemic, and pursuant to the Second Amended Standing Order 2020-10 and 2020-14, the court postponed Catalui's jury trial until May 10–12, 2021. Catalui filed a Motion for Bond on September 21, 2020, stating that the rapid spread of coronavirus across the country risked his health and safety. ECF No. 61. He also stated that being housed in the Western Virginia Regional Jail (the "Jail") exposed him to significant risk of contracting the virus and hindered his ability to consult with counsel due to the Jail's new safety protocols, in violation of his Fifth and Sixth Amendment rights, respectively. Id. Catalui did not allege that there were any confirmed cases of COVID-19 in the Jail at that time, only that the likelihood of the virus eventually reaching the Jail was great. After a bond hearing was held on October 21, 2020, Judge Ballou granted the government's motion for detention and entered an order of detention pending trial based on the same factors mentioned above. ECF Nos. 65, 68. Catalui then filed the present motion on November 18, 2020, due to the increase of COVID-19 cases throughout southwest Virginia and, specifically, the Jail. ECF No. 75. Catalui also stated that as of November 18, 2020, he had contracted COVID-19. Id. This motion is an appeal of the Magistrate Judge's denial of bond.

## II.

Review of a magistrate judge's decision for non-dispositive issues is highly deferential. Peebles v. Four Winds Int'l, No. 6:07-cv-1, 2008 WL 901550, at *3 (W.D. Va. Mar. 31, 2008). Therefore, a district court will only overturn a magistrate judge's decision if it is "clearly

erroneous or contrary to law." Id. ("The district court affords broad discretion to the magistrate judges under this highly deferential standard of review and reversal is appropriate only if that discretion is abused."); see also 28 U.S.C.A. § 636(b)(1)(A). "An order is 'clearly erroneous' if the reviewing court, considering the entirety of the evidence, 'is left with the definite and firm conviction that a mistake has been made.'" Peebles, 2008 WL 901550, at *3 (quoting United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948)); see also Harman v. Levin, 772 F.2d 1150, 1152 (4th Cir. 1985). Thus, the party seeking to overturn a magistrate judge's order bears a heavy burden. Id.; see 12 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3069 (3d ed. 1998) ("[I]t is extremely difficult to justify alteration of magistrate judge's nondispositive actions by the district judge.").

### III.

Here, Catalui raises three arguments to overturn the magistrate's decision: (1) a Fifth Amendment due process violation; (2) a Sixth Amendment right to counsel violation; and (3) new evidence amounting to a change in circumstances under 18 U.S.C. § 3142 of the Bail Reform Act (the "Act"). ECF No. 75. This court will address each argument in turn.

A. <u>Defendant's continued detention does not violate his Fifth Amendment rights.</u>

Defendant asserts that continued detention in the Jail violates his Fifth Amendment due process rights because he is not being protected from an environment that "could literally result in his death merely by his presence [in the jail]." Id. In order to prove a condition of pretrial detention violates the Fifth Amendment, courts must determine whether the condition amounts to "punishment." United States v. Frost, 455 F. Supp. 3d 395, 400 (E.D. Mich. 2020) (citing Bell v. Wolfish, 441 U.S. 520, 535 (1979)). If a pretrial condition is rationally related to

3

a legitimate government interest, then it does not amount to punishment. Wolfish, 441 U.S. at 539. Thus, the question before the court is whether Catalui's pretrial detention in the Jail is rationally related to a legitimate government interest.

Here, the defendant's detention is related to the government's interest of ensuring his appearance. In United States v. Salerno, the Supreme Court stated that "pretrial detention, for purposes of . . . ensuring a defendant's appearance, is not punitive under the Due Process Clause." United States v. Salerno, 481 U.S. 739, 739 (1987). For the reasons stated above, the defendant was deemed to be a flight risk. Additionally, his pretrial services report concluded that no condition or combination of conditions could reasonably ensure that Catalui appear in court. ECF No. 64. Accordingly, the government has a well-founded interest in ensuring that the defendant does not flee. "Even if pretrial detention during a worldwide pandemic seems punitive in the lay sense, that restriction cannot violate due process unless there is also an express intent to punish with no rational relationship to legitimate government interests." Frost, 455 F. Supp. 3d at 400 (quoting United States v. Shelton, No. 3:19-cr-14, 2020 WL 1815941, at *7 (W.D. Ky. April 9, 2020)). The purpose of pretrial detention is to protect and ensure the defendant's compliance with the law. Therefore, because Catalui's pretrial detention is rationally related to the government's legitimate interest of ensuring that the defendant appear in court, the defendant fails to prove a Fifth Amendment due process violation.

B. The Jail's safety procedures do not violate defendant's Sixth Amendment rights.

Next, Catalui asserts that the pandemic safety procedures put in place by the Jail substantially burden his ability to consult with counsel. ECF No. 75. The Sixth Amendment guarantees a criminal defendant the right to assistance of counsel during all "critical stages."

4

United States v. Juarez-Santamaria, 513 F. App'x 306, 309 (4th Cir. 2013) (citing Missouri v. Frye, 132 S. Ct. 1399, 1405 (2012)). However, "not every restriction on counsel's . . . opportunity to . . . consult with his client . . . violates a defendant's Sixth Amendment right to counsel." Morris v. Slappy, 461 U.S. 1, 11 (1983). A defendant's Sixth Amendment right to counsel is violated when a prison or jail "'unreasonalb[y] interfere[s] with the accused person's ability to consult counsel.'" United States v. Shipp, No. 19-cr-29, 2020 WL 3642856, at *3 (E.D.N.Y. July 6, 2020) (quoting Benjamin v. Fraser, 264 F.3d 175, 185 (2d Cir. 2001)). Thus, if a jail's restrictions on a defendant's ability to consult with counsel are reasonable, then there is no constitutional violation. Here, the question is whether the Jail's COVID-19 safety procedures are reasonable in light of the burden it places on Catalui's ability to consult with counsel.

The court finds that the procedures are reasonable. Even though face-to-face meetings have been heavily restricted due to the COVID-19 pandemic, defendant remains able to confer with counsel via "telephone . . . through glass[,] or . . . video conferences." ECF No. 61. Although electronic communication may not be the preferred or most convenient method of communication, counsel is still able to meet and consult with defendant. Because of the COVID-19 pandemic, the Jail enacted safety procedures in order to ensure the health and safety of inmates, staff, and visitors. However, there has been no categorical denial of access to counsel. The Jail has allowed for several methods of communication to ensure constitutional rights are upheld while minimizing the risk of exposure to an extremely contagious virus. On this issue, a Maryland court said:

> It appears likely that the policies . . . implemented for the safety of staff and detainees will, in the short term, make it more difficult for detained defendants to communicate with counsel . . . . But . . . strain imposed on the attorney-client relationship due to the coronavirus does not warrant release.

United States v. West, No. 19-364, 2020 WL 1820095, at *6 (D. Md. Apr. 10, 2020). Thus, because counsel still has access to and communication with the defendant, the Jail's restrictions are reasonable. Therefore, Catalui's Sixth Amendment claim fails.

    C. <u>Defendant's COVID-19 diagnosis and the virus's presence in the Jail do not warrant release.</u>

Lastly, Catalui alleges that his diagnosis of COVID-19 and the presence of the virus in the Jail present changes in his circumstance that are relevant to his pretrial detention. ECF Nos. 75, 90. "Ordinarily, a defendant should not be detained pending trial." United States v. Lee, No. 19-159, 2020 WL 1974881, at *3 (D. Md. Apr. 24, 2020); see also Salerno, 481 U.S. at 755 ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception"). The Bail Reform Act, 18 U.S.C. § 3141 et seq., governs the release or detention of a defendant pending trial. If the court determines, following a hearing, that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," the court "shall order the detention of the person before trial." Id. § 3142(e)(1). The test is disjunctive; a finding that the defendant is either a flight risk or a danger to the community suffices. See Salerno, 481 U.S. at 754-55. "But, the burden of proof differs: the government must establish that a defendant is a flight risk by a preponderance of the evidence, whereas the defendant's

danger to the community must be proven by clear and convincing evidence." Lee, 2020 WL 1974881, at *3 (citing United States v. Stewart, 19 F. App'x 46, 48 (4th Cir. 2001) (per curiam)).

In conducting its original detention analysis, the court must "take into account the available information concerning" the factors laid out in 18 U.S.C. § 3142(g). Those factors include the following:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of § 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including—
>   (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>   (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release….

Id.

If detention is ordered, a defendant may revisit an order of pretrial detention. Under certain circumstances, the Bail Reform Act provides:

> [B]efore or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

18 U.S.C. § 3142(f). In addition, the statute also provides for the temporary release of detainees under certain circumstances:

> [A] judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason.

18 U.S.C. § 3142(i). Here, Catalui raises new information that the Magistrate Judge did not have the opportunity to consider at the initial appearance or the previous bond hearing. Accordingly, the court will address whether the new information (a) constitutes a change in circumstance or awareness that has a "material bearing" on the issue of whether there are conditions of release that can protect against the potential dangers of releasing the defendant even though he is a flight risk; or (b) presents "another compelling reason" justifying pretrial release.

    i. <u>The spread of COVID-19 and defendant's health do not require his pretrial release.</u>

Catalui did not supplement any health information to support his motion. Thus, the court will refer to the information obtained from the pretrial services report. There, defendant stated "he is of excellent physical health with no medical problems reported." ECF No. 64. He also stated that he has had no prior hospitalizations. <u>Id.</u>

Presently, Catalui states that because he contracted COVID-19 and because 230 inmates at the Jail tested positive for the virus as well, his pretrial release is necessitated because his previous apprehensions regarding the spread of COVID-19 to the Jail are no longer theoretical. ECF No. 75. He does not argue that the Jail has failed to take reasonable preventive measures in response to the growing coronavirus cases. Now, the court must

consider whether the new information about Catalui's health, the ongoing pandemic, and the incidences of COVID-19 at the Jail have a "material bearing" on the § 3142 analysis.

Courts in the Fourth Circuit have held that the presence of the virus, even in a detention setting,[1] does not automatically warrant release of a health-compromised individual. United States v. Bland, No. 15-141, 2020 WL 3546872, at *2 (D. Md. June 29, 2020) (collecting cases). Indeed, a district court in Maryland denied release of a pretrial detainee who actually contracted coronavirus. West, 2020 WL 1820095, at *1. In West, a pretrial detainee was not released on bond because he was found to be a danger to the community. Id. The court also found that the defendant was receiving sufficient medical treatment in the detention center. Id. at *5.

Here, pursuant to the disjunctive test articulated in Salerno, although the defendant is not a danger to the community, he is a flight risk, so the West rationale is still applicable. As stated above, Catalui was found to have significant ties overseas, no employment or residence, and no preexisting health conditions that make him more susceptible to the virus. In fact, he claims to be in excellent health and does not recall any prior hospitalizations. Additionally, he does not allege that the medical treatment he is receiving is insufficient in the Jail. Therefore, Catalui's diagnosis of COVID-19, alone, does not warrant revisiting the Magistrate Judge's detention order.

Although the Jail has reported COVID-19 cases, the court finds that the situation is not so severe that it materially bears on the § 3142 analysis. Additionally, the Jail has increased

---

[1] The court acknowledges that detention facilities are especially vulnerable to the virus and are more limited in executing the recommended preventive measures.

testing and taken precautionary measures to isolate and treat the confirmed coronavirus cases. Furthermore, Catalui does not contend that the Jail is not responding to the situation responsibly. See Banks v. Booth, No. 20-849, 2020 WL 1914896, at *6–7, *13–14 (D.D.C. Apr. 19, 2020) (finding the lack of preventive measures taken in responding to a severe outbreak posed an "unreasonable risk" on detainees, who faced a rate of infection over seven times that of the surrounding D.C. community). Therefore, Catalui has not raised new information or circumstances that materially bear on the § 3142 analysis.

    ii. <u>Defendant presents no compelling reason for his pretrial release.</u>

Temporary release under 18 U.S.C. § 3142(i) is not available either. Under § 3142(i), the defendant must demonstrate a compelling reason that warrants release. United States v. Creek, No. 19-36, 2020 WL 2097692, at *3 (D. Md. May 1, 2020). In the context of the COVID-19 pandemic, the Fourth Circuit has suggested that § 3142(i) requires evaluating multiple considerations, including:

> severity of the risk that the COVID-19 virus poses to the defendant, given his existing medical conditions and the current COVID-19 situation at the facility where he is being held, and whether that risk, balanced against the other Bail Reform Act factors, rises to the level of a 'compelling reason' for temporary release under 18 U.S.C. § 3142(i).

Id. at *1 (citing the Fourth Circuit's order of remand); Chase, 2020 WL 2319132, at *3. In considering relief under 18 U.S.C. § 3142(i) the Court considers the following:

> (1) the original grounds for detention; (2) the specificity of a defendant's COVID-19 concerns; (3) the extent to which the proposed release plan is designed to mitigate or exacerbate other COVID-19 risks to the defendant; and, (4) the likelihood that a defendant's release would increase the COVID-19 risks to others.

Chase, 2020 WL 2319132, at *3 (citing United States v. Green, No. 19-539, 2020 WL 1446895, at *3 (D. Md. Apr. 15, 2020)). Essentially, a court must evaluate "'whether the COVID-19 health risks to the Defendant, should he remain detained, outweigh those traditional Section 3142(g) factors and the COVID-19 health risk to the community that Defendant's release could occasion.'" United States v. Gallagher, No. 19-479, 2020 WL 2614819, at *6 (D. Md. May 22, 2020) (citation omitted). "[T]his provision has 'sparingly' been used to justify temporary release for a specific medical treatment, such as cancer treatment." Green, 2020 WL 1873967, at *3 (quoting United States v. Hamilton, No. 19-54-01, 2020 WL 1323036, at *2 (E.D.N.Y. March 23, 2020)).

In analyzing the original grounds for detention, courts "must be mindful of the factors set out in 18 U.S.C. § 3142(g)." United States v. Thorne, No. 18-389, 2020 WL 1984262, at *2 (D.D.C. Apr. 27, 2020); see also Creek, 2020 WL 2097692, at *3 ("[I]n deciding whether temporary release is warranted, the court must still consider the danger to the community or risk of flight that would be posed by the defendant's release as analyzed under the factors set forth in 18 U.S.C. 3142(g)."). Although Catalui contracted COVID-19, the court does not find the § 3142(g) factors to be outweighed. The defendant's citizenship status and potential deportation are particularly troubling to the court because they incentivize the defendant to flee in order to avoid conviction. At both prior detention hearings, the court articulated its "grave concerns" that the defendant would not remain in the Roanoke area and would try to leave the country. ECF Nos. 50, 68. Indeed, Catalui was first apprehended while he was attempting to flee the country. ECF No. 68. Yet, Catalui has presented no evidence to mitigate the court's primary concern of the defendant's risk of flight.

Additionally, the court finds the defendant's health complaints vague and insufficient to rise to the level of a "compelling need." The defendant does not contend that he has contracted a severe case of the coronavirus or that he has any underlying health conditions that put him at a greater risk of contracting complications from the virus. Nor does he contend that he has any health conditions at all that might put him at a greater risk of suffering from COVID-19 complications. Rather, defendant asserts a generalized fear of COVID-19 complications. The Fourth Circuit has set a high bar for establishing a serious health risk to a specific defendant. See Creek, 2020 WL 2097692, at *1-*3 (collecting cases). "[M]ost of the opinions granting temporary release have done so where the defendant demonstrated a terminal illness or particularly severe medical condition that could not be adequately treated within the correctional system." Id. at *3. Catalui's health profile, taken as a whole, does not create a "compelling need" distinct from the general risk and challenges of inmates in all detention facilities.

Next, the court notes Catalui's lack of familial ties and home plan. The defendant has stated that he has no family living in the Roanoke area. In fact, the defendant has no relatives living the United States. If defendant were released, the court has serious concerns regarding who could act as a third-party custodian for Catalui. Additionally, the defendant has indicated that he has no stable residence. If he were to be released, defendant stated he would try to secure lodging at an extended stay hotel near Airport Road in Roanoke and purchase a computer to assist his wife with a commercial marketing business. While hopeful, these plans are not definite. Without evidence to the contrary, the court finds the lack of residential and familial support in the Roanoke area too great to overcome.

## IV.

Considering all of the circumstances, the court does not find that the threat posed by COVID-19 in the Jail and Catalui's health profile, taken as a whole, warrant his release on bond. Furthermore, the Jail's safety responses to the pandemic are found to be reasonable, and his continued detention is rationally related to ensuring Catalui's appearance in court. Thus, there is no violation of his Fifth or Sixth Amendment rights. Based on the totality of the evidence, the Magistrate Judge did not err in ordering Catalui's pretrial detention. The nature of the alleged offenses, lack of family ties to the area, and risk of deportation demonstrate that Catalui remains a flight risk. Moreover, the presence of COVID-19 in the Jail and Catalui's COVID-19 diagnosis do not show a change in circumstances substantial enough to have a material bearing on defendant's pretrial detention nor do they present any other compelling reason warranting release. The court does not dispute that Catalui's health concerns are valid and that his risk of reinfection of the virus is heightened, but application of the factors under § 3142(g) do not warrant release. Accordingly, for the foregoing reasons, Catalui's petition for pretrial release, ECF No. 75, is **DENIED**. An appropriate order will be entered.

Entered: March 1, 2021

Michael F. Urbanski
Chief U.S. District Judge
2021.03.01 15:28:54 -05'00'

Hon. Michael F. Urbanski
Chief United States District Judge